UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Ming S. Shiue,

        Petitioner,         Court File No. 16-cv-1341 (MJD/LIB)

v.

**REPORT AND RECOMMENDATION**

Anoka County 10th Judicial District Court,

        Respondent.

This matter came before the undersigned United States Magistrate Judge on Ming S. Shiue's ("Petitioner") Petition for Writ of Habeas Corpus, [Docket No. 1], pursuant to 28 U.S.C. § 2241. The case was referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

For the reasons set forth below, the Court recommends that the Petition for Writ of Habeas Corpus, [Docket No. 1], be **DENIED**.

### I. BACKGROUND

In 1980, the United States District Court, District of Minnesota, sentenced Petitioner to a life sentence for interstate transportation of a kidnapping victim, and the Minnesota state district court sentenced Petitioner to 40 years' imprisonment for kidnapping and murder, to be served concurrently to his federal sentence. Since then, Petitioner has repeatedly sought post-conviction relief, both in state and federal court. This Court need not describe all of the specific facts underlying Petitioner's crimes in great detail as other cases do so sufficiently. See, e.g., State v. Shiue, 326 N.W. 2d 648, 649-51 (Minn. 1982). Instead, the Court will summarize the underlying facts and procedure that more directly give rise to the present petition.

Petitioner first encountered M.S. during the 1965-1966 school year, when M.S. taught Petitioner's high school algebra class. (Resp. Exh. 1, [Docket No. 10], 10). Petitioner spent close to the next 15 years fantasizing about and obsessing over M.S. During that time, Petitioner wrote extensive rape fantasies about M.S. (Id. at 4). He broke into the home of M.S.'s in-laws under the mistaken belief that M.S. lived there, held M.S.'s in-laws at gunpoint, and threatened to kill them if they told the police. (Id.). Petitioner also tried three times to break into M.S.'s apartment. Shiue v. Warden, No. 12-cv-583 (RHK/LIB), 2013 WL 1249217, *1 (D. Minn. Jan. 25, 2013), report and recommendation adopted, 2013 WL 1249215 (D. Minn. Mar. 26, 2013); (Resp. Exh. 1, [Docket No. 10], 10).

On May 16, 1980, Petitioner kidnapped M.S. and her 8-year-old daughter at gunpoint. Shiue, 2013 WL 1249217, at *2. While transporting them to his home, Petitioner kidnapped and killed a 6-year-old boy who approached the vehicle while M.S. and her daughter were bound and gagged in the vehicle's trunk. Id. Petitioner kept M.S. and her daughter captive for more than 7 weeks, during which time he repeatedly raped and threatened M.S. and threatened to kill her family. Id. M.S. and her daughter eventually escaped and police arrested Petitioner. Id.

While in jail awaiting trial, Petitioner offered to pay another inmate $50,000 to either kill M.S. and her daughter so that they could not testify or assist Petitioner in escaping jail. Id. During Petitioner's trial in federal court, Petitioner lunged at M.S. as she walked to the witness stand. Id. Petitioner was convicted and sentenced to life in prison. Id. During Petitioner's subsequent state court trial for the kidnapping and murder of the 6-year-old boy, Petitioner attacked M.S. while she testified, slashing her face with a knife he had smuggled into the courtroom and inflicting an injury that required 62 stitches. Id.

Petitioner filed direct appeals from both his federal and state convictions. See, Shiue, 326 N.W. 2d at 653; United States v. Shiue, 650 F. 2d 919 (8th Cir. 1981). In his state appeal, Petitioner asserted various trial and sentencing errors. Shiue, 326 N.W. 2d at 653. Finding no error, the Minnesota Supreme Court affirmed Petitioner's state conviction and sentence. Id. at 655. In his federal appeal, Petitioner requested reversal of his conviction, again alleging trial errors and arguing that there was insufficient evidence to overcome his asserted insanity defense. Shiue, 650 F.2d at 920. The Eighth Circuit disagreed and affirmed his federal conviction. Id.

At the time of his conviction and sentencing in the federal case, the applicable federal statute provided that Petitioner would be "eligible for release on parole . . . after serving ten years of a life sentence or of a sentence of over thirty years, except to the extent otherwise provided by law." Shiue, 2013 WL 1249217, at *5, n.7. Petitioner's first federal parole hearing occurred on September 16, 2003. Id. at *5. The Parole Commission denied parole and continued Petitioner "to expiration" (meaning his full sentence of life in prison) because it found that he "'pose[d] a serious threat to the community if released on parole at any time during this sentence.'" Id.

Petitioner appealed this parole decision, and the National Appeals Board affirmed. Id. Although the Parole Commission held additional interim hearings on Petitioner's parole in 2007 and 2009, it has not changed Petitioner's "'continuance to expiration' status."[1] Id.

In 2010, Petitioner became eligible for possible mandatory parole on his federal sentence pursuant to a federal statute that stated that a prisoner serving a life sentence "'shall be released after having served . . . thirty years of each consecutive term" unless the Parole Commission determines that the prisoner "has seriously or frequently violated institution rules and regulations

---

[1] As to Petitioner's 40-year concurrent state sentence, the Commissioner of Corrections granted supervised release on July 9, 2007, although Petitioner has at all times continued to remain in federal physical custody serving his federal life sentence. (Resp. Mem., [Docket No. 8], 2; Resp. Exh. 15, [Docket No. 10], 1-2).

3

or that there is a reasonable probability that he will commit any Federal, State, or local crime." Shiue, 2013 WL 1249217, at *5 & n.9. Petitioner ultimately was <u>not</u> granted parole.[2] However, in October 2009, due to a concern that Petitioner <u>might</u> be released prior to July 2010, Anoka County ("Respondent") filed a petition to civilly commit Petitioner as a sexually dangerous person ("SDP") and a sexual psychopathic personality ("SPP"). (Resp. Mem., [Docket No. 8], 3). Following a lengthy trial, the Anoka County District Court ordered on September 29, 2010, that "[u]pon release from federal custody," Petitioner will be "committed to the Minnesota Commissioner of Human Services for treatment in the Minnesota Sex Offender Program" ("MSOP") as an SDP and SPP. (Resp. Exh. 1, [Docket No. 10], 39-40).

The state district court further ordered that Petitioner would remain subject to a detainer while in federal custody and, upon release from federal custody, he would be taken into custody by the Anoka County Sheriff and transported to the MSOP. (<u>Id.</u>). If Petitioner were to ever be released from federal prison, within 60 days of his entry into treatment at the MSOP thereafter, treatment staff will file a report with the district court pursuant to Minn. Stat. Ann. § 253B.18, Subd. 2, and within 14 days of receiving that report, the state district court will hold a review hearing to make a final determination regarding Petitioner's indeterminate civil commitment as an SDP or SDP. (<u>Id.</u>).

Petitioner appealed his civil commitment by state district court, arguing that the state district court had erred because (1) there was insufficient evidence to show he is an SDP and SPP; (2) he had shown a less-restrictive alternative was available, namely in-custody sex-offender treatment followed by intensive parole; and (3) denial of federal parole had violated his

---

[2] Although neither party provides the Parole Commission's decision on the possible mandatory parole, it is clear from the records currently before the Court that mandatory parole was denied, as Petitioner remains in federal prison. (Petition, [Docket No. 1], 1; Resp. Mem., [Docket No. 8], 1). According to 28 C.F.R. § 2.53, therefore, Petitioner "shall serve until the expiration of his sentence less good time"; in other words, Petitioner will in fact serve the rest of his life in federal prison.

4

due process rights by depriving him of sex-offender treatment. In re Civil Commitment of Shiue, No. A10-2006, 2011 WL 1546607, *1, 8 (Minn. Ct. App. April 26, 2011), rev. denied June 28, 2011. Finding no error and no violation of Petitioner's due process rights, the Minnesota State Court of Appeals affirmed the civil commitment on April 26, 2011. Id. at *1. The Minnesota Supreme Court denied Petitioner's subsequent petition for review on June 28, 2011. (Resp. Exh. 7, [Docket No. 10]).

On March 6, 2012, Petitioner filed in this Court a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Resp. Exh. 8, [Docket No. 10], 1). Petitioner identified seven grounds which he argued justified this Federal Court vacating the state's civil commitment. Shiue, 2013 WL 1249217, at *5-6. Specifically, he argued: (1) the Anoka County District Court erred by presuming that he would be released from federal prison; (2) it further erred by failing to wait until after the Parole Commission determined whether he would be paroled; (3) it further erred by failing to find an alternative less restrictive than civil commitment was available; (4) the Minnesota Court of Appeals erred by failing to reverse the state district court; (5) applicable Minnesota statutes are unconstitutional if they allow civil commitment of a person still in prison and whose release is not imminent; (6) civil commitment of a prisoner serving a life sentence who has not been granted parole is unconstitutionally cruel and unusual punishment; and (7) Minnesota had no jurisdiction to civilly commit him because he was in federal custody. Id. at *6.

In a Report and Recommendation filed on January 25, 2013, this Court recommended dismissing with prejudice the first four arguments because they failed to raise a federal claim, dismissing with prejudice the fifth and sixth arguments because they were procedurally defaulted, and dismissing without prejudice the final argument because Petitioner had not yet presented it in any Minnesota state court. Id. at *6-14. On March 26, 2013, the Report and

Recommendation was adopted and the district court denied Petitioner's petition for writ of habeas corpus. Shiue, 2013 WL 1249215, at *1.

In April 2013, Petitioner filed in state district court a motion for relief from judgment pursuant to Minnesota Rule of Civil Procedure 60.02. (Resp. Exh. 15, [Docket No. 10]). When the state district court denied his motion, Petitioner appealed, but the Minnesota State Court of Appeals affirmed. See, In re Civil Commitment of Shiue, No. A13-2195, 2014 WL 2690481, *1 (Minn. Ct. App. June 16, 2014), rev. denied Sept. 16, 2014 (Minn.). Specifically, the Minnesota State Court of Appeals affirmed the rejection of Petitioner's argument the state district court violated his due process rights by using his lack of participation in therapy as grounds for his civil commitment, and that, had Petitioner had access to therapy, he could have proved commitment was unnecessary. Id. The Minnesota State Court of Appeals held that those arguments had been raised and denied in Petitioner's direct appeal of the civil commitment; so they were barred by res judicata. Id.

The Minnesota State Court of Appeals also affirmed the state district court's rejection of a subject-matter jurisdiction argument as meritless, and it held that Petitioner had waived his venue argument because he had previously argued himself that Anoka County was the proper venue for his civil commitment proceedings. Id. at *1-2. Finally, the Minnesota State Court of Appeals held that Petitioner had waived his comity and personal jurisdiction challenges because he failed to raise them in the state district court. Id. at *2. The Minnesota Supreme Court denied Petitioner's subsequent petition for review on September 16, 2014. (Resp. Exh. 19, [Docket No. 10]).

On November 6, 2014, Petitioner filed a second rule 60.02 motion in state district court, arguing that his commitment was void because of a violation to his right to a "speedy trial," by

6

which Petitioner meant the review hearing that the district court, in the civil commitment order, had ordered would occur only after his release from federal prison and his entry into MSOP treatment. (Resp. Exh. 21, [Docket No. 10], 1-2). In February 2015, the state district court denied this rule 60.02 motion, rejecting the speedy trial argument. (Id. at 2).

Petitioner again appealed, but the Minnesota State Court of Appeals entered an order on March 13, 2015, ordering supplemental briefing on the question of whether the denial was even an appealable order. (Id. at 3). In that order, the state Court of Appeals noted "that it appear[ed] that [this] rule 60.02 motion either raises issues that could have been raised in a direct appeal in the original commitment proceeding, or that were previously raised in appellant's 2013 rule 60.02 motion." (Id.). On April 21, 2015, the Court of Appeals dismissed the appeal, holding that the February 2015, order was not appealable. (Resp. Exh. 24, [Docket No. 10], 1-2).

In its April 21, 2015, order of dismissal, the Minnesota State Court of Appeals also rejected Petitioner's argument that "he could not have raised a speedy-trial argument in opposing the initial commitment order because it was not known at that time that his parole would be denied and thus that he would not be transferred to a treatment facility and a second-stage commitment hearing would not be held." (Id. at 2). The state Court of Appeals noted: "To the extent that the [Petitioner's] speedy-trial argument could not have been raised in opposition to the initial commitment order, he could have made it in his first motion to vacate." (Id.). Petitioner failed to file a timely petition for review of this order by the Minnesota Supreme Court, and the Minnesota Supreme Court denied his motion to file a late petition for review. (Resp. Exh. 26, [Docket No. 10]).

In July 2015, Petitioner filed in state district court a petition for writ of habeas corpus, reasserting his speedy trial argument, and he further contended that it was illegal to "continue[]

7

state detention for a trial that never ends." (Resp. Exh. 28, [Docket No. 10], 1). Again, when Petitioner referred to his "trial," he appeared to mean the review hearing which the Anoka County district court ordered will occur only after he actually enters (if ever) treatment at the MSOP. (See Resp. Exh. 30, [Docket No. 10], 1-2). Petitioner also raised a claim of ineffective assistance of counsel by: (1) arguing during the direct appeal of his civil commitment that he had a due process right to treatment, an argument Petitioner asserts is widely recognized as meritless; (2) failing to argue the violation of his speedy trial right; and (3) abandoning representation before the review hearing. (Resp. Exh. 28, [Docket No. 10], 8-9).

The state district court denied his state habeas petition on jurisdictional grounds, and on appeal, the Minnesota State Court of Appeals affirmed, noting that "[a]ll of [Petitioner's] apparent substantive arguments were either previously raised or could have been raised in his direct appeal of his commitment or in the earlier appeal of the denial of his first rule 60.02 motion." (Resp. Exh. 30, [Docket No. 10], 2). In addition, the Minnesota State Court of Appeals observed that claims of ineffective assistance of counsel cannot be properly raised in state petitions for habeas relief and, even if appellant could raise his speedy trial argument, it was meritless. (Id.). The court explained:

> Appellant has already had his trial. He was judicially committed. We affirmed his commitment on direct appeal, and his petition for review was denied by the [state] supreme court. Appellant will be entitled to a review hearing after (and only if) he is committed to a secure treatment facility and a treatment report is received by the court under Minn. Stat. § 252B.18, subd. 2 (2014), indicating that appellant should remain committed. There cannot possibly be a review hearing (which appellant incorrectly refers to as his "trial") until appellant is actually committed to the secure treatment facility and the treatment report provides a basis for review.

(Id.) (emphasis added). Petitioner again filed a petition for review, which the Minnesota Supreme Court again denied on March 29, 2016. (Resp. Exh. 33, [Docket No. 10]).

On May 19, 2016, Petitioner filed in this Court the present Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 and a Memorandum in Support of the Petition. (Petition, [Docket No. 1], 1; Pet. Mem., [Docket No. 2], 1). Respondent filed an Answer, a Memorandum in Support of its Answer, and multiple exhibits in support. (Answer, [Docket No. 7]; Resp. Mem., [Docket No. 8]; Resp. Exhs., [Docket No. 10]). On August 25, 2016, Petitioner filed a Reply to the Answer. (Pet. Reply, [Docket No. 11], 1).

The case was referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

## II.  PETITION FOR WRIT OF HABEAS CORPUS, [DOCKET NO. 1]

Petitioner seeks a writ of habeas corpus, purportedly pursuant to 28 U.S.C. § 2241, challenging an alleged detention he maintains resulted from his state court initial civil commitment as an SDP and SPP. (Petition, [Docket No. 1], 1-6). He asserts three bases for relief: (1) the Minnesota state courts erred by failing to properly consider his Sixth Amendment speedy trial rights and the requirement he asserts exists that a review hearing regarding his civil commitment had to be held within 1 year; (2) his continuing civil commitment is unconstitutional because he has participated in sex offender treatment (while in federal custody) since 2011, eliminating the previous basis for his civil commitment, yet there has been no opportunity for him to show these changed conditions; and (3) ineffective assistance of counsel during the direct appeal of his civil commitment and during the time since his commitment hearing. (Id. at 3-5; Pet. Mem., [Docket No. 2], 1-5).

Petitioner and Respondent dispute which habeas statute should guide this Court's decision—28 U.S.C. § 2241 or § 2254.[3] (Resp. Mem., [Docket No. 8], 14-15; Pet. Reply,

---

[3] The Court agrees with Respondent's contention that any consideration of this Petition would be governed by 28 U.S.C. § 2254. See 28 U.S.C. § 2254 (addressing federal habeas relief for a "person in custody pursuant to the

9

[Docket No. 11], 2). The parties also dispute whether the current Petition is barred as a second and successive petition for federal habeas relief, and whether Petitioner's claims have been sufficiently exhausted in state court, adequately identify federal grounds for relief, and are meritorious. (Resp. Mem., [Docket No. 8], 15-23; Pet. Reply, [Docket No. 11], 2-7). Finally, Respondent contends that the Petition is premature, as Petitioner will have the opportunity to argue that he no longer meets the state civil commitment requirements if and when Petitioner is released from federal custody to enter treatment at the MSOP, and he has his final review hearing before the state district court. (Resp. Mem., [Docket No. 8], 22-23). Although the Court agrees with Respondent on its last assertion, the Court need not address the parties' other arguments, as it does not have jurisdiction to do so.

A fundamental tenet of federal habeas relief is that in order to obtain such relief, a "habeas petitioner [must] be 'in custody' under the conviction or sentence under attack <u>at the time his petition is filed</u>." <u>Maleng v. Cook</u>, 490 U.S. 488, 490-91 (1989) (per curiam) (citation omitted) (emphasis added). The United States Supreme Court has held that this "in custody" requirement is jurisdictional. <u>Id.</u> at 490. Thus, if a habeas petitioner is not "in custody" for the conviction or sentence he or she is challenging when he or she files the federal habeas petition, the petition must be dismissed for lack of jurisdiction. <u>See</u>, <u>Charlton v. Morris</u>, 53 F.3d 929, 929 (8th Cir. 1995), <u>cert. denied</u> 516 U.S. 926 (1995). In the case presently before the Court, Petitioner is <u>not</u> "in custody" as a result of the state court civil commitment order even though

---

judgment of a State court"); <u>Crouch v. Norris</u>, 251 F.3d 720, 721 (8th Cir. 2001) (identifying 28 U.S.C. § 2254 as "the only vehicle" by which a state prisoner could attack the State court judgment pursuant to which he was in custody). Similarly, in the case presently before this Court, Petitioner is attempting to challenge a putative state court judgment which he believes imposes inchoate custody in violation of Federal Constitutional rights, and any such attack must be brought in accordance with 28 U.S.C. § 2254.

the "custody" he now attempts to challenge in the current Petition stems solely and directly from that order.

As explained above, Petitioner is in federal custody serving a life sentence of imprisonment for a federal criminal conviction. Petitioner appeared before the federal Parole Commission in 2003, after which the Parole Commission continued his parole "to expiration" (of his life sentence) because it found that he "'pose[d] a serious threat to the community if released on parole at any time during this sentence.'" Shiue, 2013 WL 1249217, at *5. The Parole Commission held subsequent review hearings on Petitioner's parole in 2007 and 2009, but it did not change Petitioner's parole status. Id. Although Petitioner became eligible for possible mandatory federal parole in 2010, it is clear, on the record presently before this Court, that the Parole Commission again denied Petitioner's parole. Consequently, Petitioner is and remains in the physical custody of the Federal Bureau of Prisons, (Petition, [Docket No. 1], 1; Resp. Mem., [Docket No. 8], 1), and not the MSOP.

Simply put, Petitioner is in federal custody as a result of his federal criminal conviction. He is not in custody because of the state district court's initial civil commitment order, which he now seeks to challenge. That state court order explicitly states that only "[u]pon release from federal custody," will Petitioner be taken into state custody and transported to the MSOP for treatment. (Resp. Exh. 1, [Docket No. 10], 39-40). This change from federal to state custody has not yet occurred, nor on the present record does it appear likely to ever occur. Accordingly, Petitioner is not "in custody" pursuant to the state district court's civil commitment proceedings and resulting initial order of civil commitment. Therefore, he may not utilize a federal habeas

11

corpus Petition to challenge those state proceedings and any inchoate as of yet merely potential future state custody due to the state court's initial order of civil commitment.[4]

Additionally, to the extent that Petitioner might be deemed to be arguing that he is in state custody as a result of the detainer issued as part of the state court civil commitment order, this Court has previously held that the issuance of an unexecuted detainer does not result in the individual being "in custody." See, Politano v. Federal Detainer, No. 12-cv-1530 (PAM/LIB), 2013 WL 796360, *4-5 (D. Minn. Feb. 6, 2013) (citing multiple cases that hold that unexecuted detainers by the Parole Commission or immigration authorities do not constitute being "in custody" for habeas corpus purposes), report and recommendation adopted, Politano v. United States, No. 12-cv-1530 (PAM/LIB), 2013 WL 791804 (D. Minn. March 4, 2013).

Finally, the Court notes that Petitioner also lacks standing to bring the current federal habeas Petition. Article III of the United States Constitution limits federal courts to adjudicating cases and controversies. Several doctrines have developed to define what is meant by the "case or controversy" requirement, including the principle of standing. See, Spokeo v. Robins, 136 S. Ct. 1540, 1547 (2016) (explaining origin of standing requirement). Three elements make up the "'irreducible constitutional minimum' of standing . . . The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Id. (citing, Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). "To establish injury in fact, a plaintiff must show that he

---

[4] If Petitioner is at some future point actually released from federal custody and taken into state custody pursuant to the initial state district court civil commitment order, Petitioner will receive the evaluation and review hearing statutorily required prior to the state district court's decision on whether to indeterminately commit Petitioner. See, Minn. Stat. § 253B.18. If the state district court considers Petitioner's arguments on whether his status and circumstances have changed since the initial commitment hearing and disagrees, the state district court will enter an order indeterminately committing Petitioner. Id. At that point, Petitioner will have the opportunity to appeal the indeterminate commitment order through the proper channels. See, In re Civil Commitment of Pittman, No. A11-49, 2011 WL 1938318 (Minn. Ct. App. May 23, 2011) (considering direct appeal of order of indeterminate commitment to the MSOP after a final review hearing).

or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, 136 S. Ct. at 1548 (citing Lujan, 504 U.S. at 560).

In the Petition presently before this Court, Petitioner has not shown any injury in fact. The only injury he asserts is the "ongoing detention" he claims is occurring due to his initial civil commitment. As explained above, however, Petitioner is not presently "in custody" by MSOP because of the initial state court civil commitment order, and any such claim of detention is both purely conjectural and hypothetical. In order for Petitioner to actually be taken into and held in custody pursuant to the initial state court civil commitment order, the Parole Commission would have to allow Petitioner federal parole which is an unlikely scenario given the present record before this Court and considering that the Parole Commission has already repeatedly denied Petitioner federal parole.

As already noted above, even if Petitioner were someday granted federal parole and taken into MSOP custody pursuant to the state court's initial civil commitment order, Petitioner will then at that time be evaluated and receive a review hearing before the state district court prior to any final, indeterminate civil commitment. In order for Petitioner to be harmed by an alleged unwarranted indeterminate civil commitment, the state district court will have to first actually enter an order of indeterminate civil commitment; and Petitioner will, thereafter, have the opportunity to seek further judicial review through the state appellate courts.

The state district court's initial order of civil commitment (even including its detainer) currently causes no actual injury in fact to Petitioner. Even construing Petitioner's pro se pleadings liberally, any injury due to the state court's initial order of civil commitment has not

resulted in any concrete injury that would be redressable by a federal Writ of Habeas Corpus. To the extent that Petitioner alleges any injury, it is speculative and hypothetical.

Thus, Petitioner lacks standing to bring this Petition. <u>See</u>, <u>Brown v. Rios</u>, Case No. 8-cv-5752 (JRT/RLE), 2009 WL 5030768, *5-6 (D. Minn. Dec. 14, 2009) (dismissing federal habeas corpus petition in part due to the petitioner's lack of standing to bring the Petition because he did not show any concrete injury arising from the asserted failure by the Bureau of Prisons and "Petitioner has not, and may not ever, suffer any" such injury).

In addition, as explained above, based on the record currently before the Court and the undisputed fact that Petitioner is not in MSOP custody but is instead currently in federal custody at the United States Penitentiary in Marion, Illinois, serving a life sentence as a result of his federal criminal conviction, this Court concludes that Petitioner is not "in custody" pursuant to the state court civil commitment order he attempts to challenge in the Petition now before this Court. Accordingly, because an absence of such custody is likewise fatal to this Court's jurisdiction over the Petition, the Court recommends that the Petition be **DISMISSED** for lack of jurisdiction.

### III.   CONCLUSION

A. Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Petitioner's Petition for Writ of Habeas Corpus, [Docket No. 1], be **DISMISSED for lack of jurisdiction**.

Dated: December 8, 2016                                          /s Leo I. Brisbois
                                                                                          The Honorable Leo I. Brisbois
                                                                                          United States Magistrate Judge

**N O T I C E**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.